UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

EROL GARCIA,

                              Petitioner,                          Case # 25-CV-6130-FPG

v.

                                                                         DECISION & ORDER

JEFFREY SEARL,

                              Respondent.
───────────────────────────────

## INTRODUCTION

*Pro se* Petitioner Erol Garcia brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention at the Buffalo Federal Detention Facility. ECF No. 1. The government has filed a motion to dismiss, arguing that the petition insufficiently pleads unconstitutional detention. ECF No. 5. For the reasons that follow, the petition is DENIED, and the government's motion to dismiss is DENIED AS MOOT.

## BACKGROUND

The following facts are taken from the record. Petitioner is a native and citizen of Honduras, who entered the United States without inspection in June 2019. *See* ECF No. 5-2 at 2. Petitioner was ordered removed in May 2024, after he had been convicted of second-degree robbery in New York. *See id.* at 2-3. He did not file an appeal. *Se* ECF No. 1 at 2. Petitioner entered immigration custody in August 2024, and has been detained at the Buffalo Federal Detention Facility since that time. ECF No. 5-2 at 3. In March 2025, Petitioner filed the present petition. ECF No. 1. He requests release pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), arguing that there is "no significant likelihood of [his] removal in the reasonably foreseeable future." *Id.* at 7.

1

In April 2025, Respondent moved to dismiss the petition. ECF No. 5. Respondent noted that Petitioner had only been detained for approximately six months, and there were no foreseeable obstacles to his removal—the United States and Honduras "maintain diplomatic relations and have a repatriation agreement in place"; the United States "has a substantial track record[] of making removals to Honduras"; and negotiations regarding Petitioner's removal were ongoing. *Id.* at 10-11. Petitioner did not reply to Respondent's motion.

As Respondent's counsel would later notify the Court, Petitioner subsequently made efforts to thwart his removal. On May 20, 2025, Petitioner provided immigration authorities with his purported "Cedula number," which is an "identification number assigned to each individual of Honduran nationality." ECF No. 7 at 1. One day later, Petitioner "advised ICE that his Cedula number's last two digits were different than what he provided the day before." *Id.* In early June 2025, the Honduran Consulate "advised that it was unable to verify Petitioner's claimed Cedula number" and "advised that it was unable to locate a birth certificate for Petitioner." *Id.*

On June 17, 2025, Petitioner "admitted to ICE that he had been using a fake identity since the Border Patrol initially detained him to stop his deportation to Honduras." *Id.* at 2. He claimed his real name was "Exon Mejia-Diego," and he provided a new Cedula number. However, the Honduran consulate notified the United States that "the photograph of Petitioner does not appear to match the records of Exon Mejia-Diego," and that "Exon Mejia-Diego registered two children in Honduras in 2022 and 2024." *Id.* Because Petitioner has been in the United States since 2019, Petitioner cannot be "Exon Mejia-Diego." *Id.* Respondent also alleges that Petitioner has been unwilling to otherwise verify his identity with the Honduran Consulate. *Id.* In sum, Respondent now asserts that Petitioner has "failed to cooperate in effectuating his removal," which warrants denial of the petition. *Id.* at 3.

Given the nature of the new allegations that Respondent's counsel raised against Petitioner, the Court provided Petitioner with an opportunity to be heard as to the claim that he "is the cause of any delay in his removal and is, therefore, entitled to no relief." ECF No. 8.

On August 18, 2025, the Court received a letter from Petitioner. ECF No. 9. Petitioner does not substantively dispute any of the particular allegations made by Respondent's counsel in the August 5, 2025 status report. Instead, Petitioner makes several nonresponsive statements relating to his removal. For example, he states that he was "born at home" in Honduras, that he cannot contact his mother in order to obtain appropriate documentation of his Honduran citizenship, and that he has been "investing his diligence towards having ICE remove him to [] another country." *Id.* at 1. Despite failing to meaningfully dispute counsel's allegations, Petitioner "insist[s]" that the Court "disregard the allegations that the Petitioner is contributing to his detention." *Id.* at 2.

At present, Petitioner has been in immigration custody for just over one year. *See* ECF No. 5-2 at 3.

## DISCUSSION

The parties agree on the relevant legal framework to be applied in assessing Petitioner's claim. Under 8 U.S.C. § 1231(a)(1)(A), "aliens ordered removed shall be removed by the Attorney General within [a] 90-day 'removal period.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 547 (2d Cir. 2009). "The government is required to detain an alien ordered removed until removal is effected, at least for the removal period." *Id.* (citing 8 U.S.C. § 1231(a)(2)). If removal is not effectuated within the removal period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

3

In addition, there is a "special statute [that] authorizes further detention if the Government fails to remove the alien" during the removal period. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). Specifically, 8 U.S.C. § 1231(a)(6) gives the government the discretion to detain certain categories of aliens:

> An alien ordered removed [1] who is inadmissible . . . [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . .

*Id.* (quoting 8 U.S.C. § 1231(a)(6)). By its plain language, the statute does not appear to impose any limitation on the length of an alien's detention. But in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court interpreted § 1231(a)(6) narrowly to avoid the possible constitutional problems with indefinite detention. It read the statute to impose certain implicit limitations on the government's authority to detain aliens falling into those categories. The court held that an alien could be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. This limitation is linked to the statute's "basic purpose," which is to "assur[e] the alien's presence at the moment of removal." *Id.* at 699.

The *Zadvydas* court also provided a framework under which habeas courts are to review claims challenging continued detention under § 1231(a)(6). The ultimate question for the habeas court is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* The presumptively reasonable period of detention is six months. *Id.* at 701. Once that period has passed, an alien bringing a claim bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the alien makes such a showing, "the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

4

In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien. *Callender v. Shanahan*, 281 F. Supp. 3d 428, 436-37 (S.D.N.Y. 2017); *see also Nma v. Ridge*, 286 F. Supp. 2d 469, 475 (E.D. Pa. 2003). Due deference is owed to the government's views on these matters as well as its estimation of the likelihood of removal. *See Zadvydas*, 533 U.S. at 700 (stating that review "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive . . . efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters").

In Petitioner's case, the undisputed facts make the analysis straightforward. There appears to be no dispute that, as a general mater, the United States has succeeded in removing Honduran nationals to Honduras over the years. *See* ECF No. 5-2 at 4. And Petitioner raises no factual dispute that he provided false information to the Honduran Consulate, which has prevented it from confirming his identity and, thus, thwarted immigration authorities' efforts to remove him. Because it is well-established that a noncitizen who is uncooperative in his removal cannot "convincingly argue that there is no significant likelihood of removal," *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019), his *Zadvydas* claim must fail. *Accord Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003) (stating that a "non-cooperative detainee . . . cannot legitimately object to his continued detention when that very detention is caused by his own conduct"); *Brown v. Barr*, No. 18-CV-6841, 2019 WL 4303352, at *3 (W.D.N.Y. Sept. 11, 2019) (collecting cases); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) (summary order) ("[A] self-inflicted wound should not establish grounds for [a noncitizen's] *Zadvydas* claim.").

Of course, Petitioner's noncooperation in the past does not permit continued detention indefinitely. Respondents remain under a duty to make reasonable efforts to effect Petitioner's removal. *See Gul v. Rozos*, 163 F. App'x 317, 319 (5th Cir. 2006) (summary order) (noting that a noncitizen's one-time noncooperation with removal did not relieve the government of its burden to proffer an explanation for his continued detention one year later). At present, however, it suffices to say that immigration authorities are entitled to a reasonable opportunity to navigate the diplomatic hurdles raised because of Petitioner's refusal to confirm his Honduran nationality, including by "exploring the possibility of Petitioner's removal to a third country." ECF No. 7 at 2; *accord Chen v. Banieke*, No. 15-CV-2188, 2015 WL 4919889, at *4 (D. Minn. Aug. 11, 2015) (noting that relief under *Zadvydas* is only appropriate where "removal seems a remote possibility at best," not where "removal is temporarily impeded by bureaucratic delays, setbacks, and ongoing negotiations with foreign governments").

Petitioner's petition is denied, without prejudice to renewal in the future.

## CONCLUSION

For the reasons stated herein, the petition (ECF No. 1) is DENIED, without prejudice to renewal in the future. The government's motion to dismiss (ECF No. 5) is DENIED AS MOOT. The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: August 26, 2025
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

6